**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**NOT FOR PUBLICATION**

| | |
|---|---|
| FOODTOWN, INC., et al., | |
| Plaintiff, | |
| v. | Civ. Action No. 05-3627 (KSH) |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, | |
| Defendant. | **OPINION** |

**Katharine S. Hayden, U.S.D.J.**

**I. INTRODUCTION**

For all times relevant to this matter, defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), a New York corporation, contracted with plaintiff Foodtown, Inc. ("Foodtown"), a closely-held grocery store cooperative with member stores in New York, New Jersey and Puerto Rico, to provide directors and officers liability insurance to Foodtown. In 2005, Foodtown filed suit in state court seeking a declaratory judgment, along with other relief, that National Union is obligated to pay the costs to defend or assume the defense of Foodtown in an action captioned "Food King, Inc. v. Norkus Enterprises, Inc., et al." brought by Food King, Inc., a shareholder of Foodtown, in the District Court of New Jersey ("the underlying action"). Food King filed the underlying action on March 29, 2004 in the Trenton vicinage, where it was assigned Civil Action No. 04-1500 (MLC) and is still pending before the Honorable Mary L. Cooper. On July 21, 2005, National Union timely removed this lawsuit from state court and it was assigned to the undersigned. The parties filed cross-motions for summary

1

judgment and National Union, asserting that developments in the underlying action since the filing of the cross-motions have bearing on this matter, subsequently filed a motion for leave to file a supplemental brief addressing the underlying action.  The Court denied the pending cross-motions without prejudice and granted the motion requesting supplemental briefing, after which the parties timely filed their supplemental submissions.  This opinion reinstates and addresses those cross-motions.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) authorizes a court to enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Before granting a summary judgment motion a court "must first determine whether summary judgment is appropriate -- that is, whether the moving party has shown itself to be entitled to judgment as a matter of law."  Anchorage Assoc. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990).  "The interpretation of an insurance contract is a question of law for the court to determine, and can be resolved on summary judgment."  Adron, Inc. v. Home Ins. Co., 292 N.J. Super. 463, 473 (App.Div. 1996) (internal citations omitted).  Because the facts here are not in dispute, the Court rightfully decides this coverage dispute by way of summary judgment.

## III. DISCUSSION

Foodtown had the initial burden of seeking coverage for Counts One through Four of the underlying action, while National Union has "the burden of establishing that any matter [falls] within the exclusionary provisions of the policy."  Adron, Inc. v. Home Ins. Co., 292 N.J. Super.

463, 473 (App.Div. 1996).  National Union asserts that Count Three of the underlying action is excluded from coverage by Endorsement 6 to the policy, which provides:

> In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable for any Loss in connection with any Claim(s) brought against…Twin County Grocers (including any subsidiary or affiliate thereof)…and/or any director, officer, trustee, trustee emeritus, executive director, department head, committee member, staff or faculty member, employee, or volunteer thereof.

(Ex. E to Zoller Decl.)  It further contends that the following provisions exclude coverage for the other three counts:

> The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured:
>
> (f) which is brought by or on behalf of the Organization against any Individual Insured; provided, however, this exclusion shall not apply to any derivative Claim made on behalf of the Organization by a member, an attorney general or any other such representative party if such action is brought and maintained independently of and without the solicitation of or assistance of, or active participation of or intervention of any Individual Insured or the Organization or any Affiliate thereof;
>
> (k) alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of an Insured under any express contract or agreement; provided, however, that this exclusion shall not apply to liability which would have attached in the absence of such express contract or agreement;

(Ex. E to Zoller Decl. 6-7.)  The Court, here exercising diversity jurisdiction, applies New Jersey law.

New Jersey courts generally give an insurance policy's words their plain and ordinary meaning.  President v. Jenkins, 180 N.J. 550, 562 (2004) (internal quotation marks and citations omitted).  "If the policy terms are clear, courts should interpret the policy as written and avoid writing a better insurance policy than the one purchased."  Id.

However, if the policy language is ambiguous, we construe the language to comport with the reasonable expectations of the insured.  That is, if the policy

> language fairly supports two meanings, one that favors the insurer, and the other that favors the insured, the policy should be construed to sustain coverage. [I]nsurance policy exclusions must be narrowly construed; the burden is on the insurer to bring the case within the exclusion.

Villa v. Short, 195 N.J. 15, 23-24 (2008) (internal quotation marks and citations omitted). Foodtown argues that the Court must venture beyond the policy's plain and ordinary language, and apply rules of interpretation that favor it, because the exclusionary language relied upon by National Union is ambiguous.  An insurance policy is ambiguous if "the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 247 (1979).

Examining Foodtown's arguments, the Court finds that Foodtown's reliance on the rule of *contra proferentem*, which provides that any ambiguity in the policy should be construed against the insurer as the drafter of the language, is misplaced.  A policy's ambiguous language with respect to the existence of coverage is indeed ordinarily resolved in favor of the insured. Benjamin Moore & Co. v. Aetna Cas. & Sur. Co., 179 N.J. 87, 102 (2004).  "An exception to that rule exists for sophisticated commercial entities that do not suffer from the same inadequacies as the ordinary unschooled policyholder and that have participated in the drafting of the insurance contract." Id.  Foodtown, a closely-held grocery store cooperative with member stores in New York, New Jersey and Puerto Rico, surely constitutes a sophisticated commercial entity.  It had comparable bargaining power to that of National Union in the making of the agreement and cannot now seek refuge in a rule created to protect unsophisticated policyholders with little bargaining power.  The rule of *contra proferentem* does not inform the interpretation of the coverage at issue.

Foodtown also argues that the Court must consider the "reasonable expectations" of the parties in interpreting the exclusion provisions cited by National Union.  The "reasonable

4

expectations" of the parties, however, only inform the inquiry where the Court finds the policy language ambiguous.  <u>Villa</u>, 195 N.J. at 23.  Policy language is ambiguous "where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage."  <u>Weedo v. Stone-E-Brick, Inc.</u>, 81 N.J. 233, 247 (1979).  The policy at issue here, as demonstrated by the Court's discussion below construing the policy language, is not open to two reasonable interpretations, nor is the fact that there is a lawsuit filed dispositive.  If suing over the policy language served as the litmus test for ambiguity, any policyholder could establish ambiguity by commencing a lawsuit.  The reasonable expectations of the parties do not inform the interpretation of the policy language at issue.

The Court, looking only to the plain and ordinary meaning of the policy language, addresses each count of the underlying action in turn.

**A. Count One**

Count One of the amended Food King complaint is a derivative claim brought under the Lanham Act that seeks compensatory, declaratory, and other relief for alleged misuse of the Foodtown marks.  Although Count One also raises claims against Gerard Norkus and Norkus Enterprises, "Foodtown is only seeking coverage for those claims made directly against the Foodtown Board of Directors in their capacity as such."  (Pls.' Opp'n Br. to Def.'s Suppl. Br. 4.) National Union cites section 4(f) of the policy, sometimes referred to as an "insured v. insured" exclusion, as preclusive of coverage for this count.

National Union contends that the plain language of section 4(f), which excludes coverage for claims "brought by or on behalf of the Organization against any Individual Insured" and derivative suits brought with the assistance or participation of an Individual Insured, coupled with the policy's definition of "Individual Insured," brings Count One squarely within the 4(f)

exclusion.  In opposition, Foodtown first argues that section 4(f) should be construed in light of the Third Circuit's determination in <u>Township of Center v. First Mercury Syndicate</u>, 117 F.3d 115, 118 (3d Cir. 1997), concluding that in the "insured v. insured" context, the status of an individual insured for a "claims made" policy — the type of policy at issue here — must be made at the time the claim is made.  <u>Township of Center</u>, however, involved an insurance contract subject to Pennsylvania law, and as such does not bind this Court.  Moreover, the definition of "Individual Insured" there specifically referenced "acting within the scope of their official duties," which the Third Circuit read as a temporal marking point with regards to insured status.  The definition at issue here features no such limiting language for this Court to rely on. The Court is also reluctant to rely on the reasoning there because although several Pennsylvania district courts have followed <u>Township of Center</u>, no New Jersey court, state of federal, has followed, or even cited to, the decision in the more than ten years since it was decided.  The Court declines to follow <u>Township of Center</u> and relies on the plain language of the agreement.

The plain language of the first clause, specifically the "brought by or on behalf of the Organization" language, makes clear that it contemplates shareholder derivative actions as within the exclusion.  Judge Cooper's order requiring Food King to amend its complaint to assert Count One as a shareholder derivative claim, and the subsequent amended pleading, leaves little doubt as to whether that count falls within the first clause of the section, because Food King brought the claim on behalf of Foodtown against a group of Individual Insureds, the Foodtown Board of Directors.  The applicability of this exclusion to Count One rests on whether it falls within the second clause of the section, which exempts from exclusion under 4(f) and thus provides coverage for, those derivative actions "brought and maintained independently of and without the

solicitation of or assistance of, or active participation of or intervention of any Individual Insured or the Organization or any Affiliate thereof."

National Union urges that Count One does not fall within the bounds of the second clause of section 4(f) because the underlying action has been maintained with the active participation of an Individual Insured, namely Ronald Ginsberg ("Ginsberg"), the President of Food King.  The policy defines an "Individual Insured" as "a past, present or future duly elected or appointed director, officer, trustee, trustee emeritus, executive director, department head, committee member (of a duly constituted committee of the Organization), staff or faculty member (salaried or non-salaried), Employee or volunteer of the Organization."  (Ex. E to Zoller Decl. 3.) Ginsberg, who was President of Foodtown until 2000 and on the Board of Directors until 2003, qualifies as an Individual Insured under the policy's definition because he is a past duly elected director and officer of Foodtown.  And it is undisputed that he has been an active participant in the Food King action.  His participation in the shareholder derivative action takes Count One out of realm of the second clause in exclusion 4(f) and subjects it to the first clause, which bars such actions from coverage.

 "If the policy terms are clear, courts should interpret the policy as written and avoid writing a better insurance policy than the one purchased."  President, 180 N.J. at 562.  The plain language of the policy does not authorize coverage for Count One of the Food King complaint.

### B. Count Two

The plain language of the National Union policy assuredly provides coverage for breach of fiduciary claims brought within the policy period.  Food King captioned Count Two of the complaint in the underlying action as a breach of fiduciary duty claim.  Nonetheless, National Union contends that Count Two does not in actuality allege a breach of fiduciary, and advances

several arguments to that end.  First, citing the allegations in the complaint that Foodtown failed

to properly exercise its right of first refusal, it asserts that Count Two is really a shareholder

derivative claim.   In its supplemental brief, National Union also highlights a statement by

Foodtown, located in its Reply to Food King's Counter-Statement of Material Facts, that the

right of first refusal is vested only in Foodtown.

The nature of the wrong alleged determines whether a suit asserts a derivative or

individual claim.  Kramer v. Western Pacific Industries, Inc., 546 A.2d 348, 351 (Del. 1988).

"Thus, to have standing to sue individually, rather than derivatively on behalf of the corporation,

the plaintiff must allege more than an injury resulting from a wrong to the corporation."  Id.

Count Two of the Food King complaint does that where it states:

> In breach of their fiduciary obligations, and in direct violation of Foodtown's By-
> Laws, the defendant Board members determined that Food King had no right of
> first refusal with respect to the third Manyfoods/WAL agreement.  The defendant
> Board members permitted the transfer and sale of Mayfoods stock, in violation of
> the By-Laws…The defendant Board members owed Food King a fiduciary duty
> of loyalty, good faith, and fair dealing…The defendant Board members violated
> their fiduciary duties to Food King.

(Food King Am. Compl. 31-32.)  The injury complained of, the Board's approval of actions

violative of the bylaws and the resulting loss of economic opportunity with respect to Food King,

affected Food King and no other Foodtown shareholder.  At its core, Count Two alleges that the

Board breached its duty of loyalty to Food King by ignoring the bylaws governing the sale of the

Manyfoods assets, affirmatively frustrating Food King's attempt to purchase those assets.  This

is a discrete and particularized injury to Food King and Food King alone, not an injury to

Foodtown's stockholders as a class or to Foodtown itself.  Because Count Two does not allege a

derivative claim, exclusion 4(f) does not bar coverage as to Count Two.

National Union also argues that Count Two alleges a breach of contract claim and is precluded from coverage by exclusion 4(k), which bars claims "alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of an Insured under any express contract or agreement."  (Ex. E to Zoller Decl. 7.)  National Union's contentions, however, broaden the scope of this exclusion beyond its plain and ordinary meaning.  The policy states that it does not cover a claim alleging, arising out of, based upon, or attributable to any actual or alleged contractual *liability*, whereas National Union reads the provision as precluding any claims based upon or attributable to any actual or alleged *contract*.  It attempts to cabin Count Two as a claim that falls under exclusion 4(k), asserting that Food King has brought a breach of contract action because Count Two alleges the following:

> On November 27, 2001, Food King and Manyfoods reached an agreement in principle to purchase the Cedar Knolls Store on the same terms and conditions as the WAL Letter of Intent…Instead of following through on its agreement, and in derogation of the By-Laws of Foodtown, Manyfoods ignored the Asset Purchase Agreement, ignored the letters of intent dated August 13 & 16, 2001, and entered into a new agreement with WAL.

(Food King Am. Compl. 27-28.)

But the mere mention of a contract does create a claim alleging, arising out of, based upon or attributable to any actual or alleged contractual liability.  The allegations concerning the contract for the purchase of the WAL assets serve as part of the factual basis for the claim, not the legal basis.  Put specifically, the allegations concerning the Manyfoods/Food King contract are in the complaint as evidence of the concreteness, and the particularity, of Food King's claim against the Board for its alleged breach of fiduciary duties with respect to the lost opportunity to purchase the assets, not as the actual basis of the claim.  To the extent that Count Two seeks relief resulting from the Board's breach of the duty of loyalty to Food King, exclusion 4(k) does not bar coverage.

### C. Count Three

National Union contends that Endorsement 6, which is a "specific entity exclusion" that precludes coverage for losses incurred in connection with any claims brought against Twin County Grocers, applies to Count Three of the Food King complaint.  Count Three concerns yet another lawsuit involving Foodtown and its shareholders.  Twin County Grocers, a cooperative of independent grocers that included the Class A shareholders of Foodtown, a New York grocer, and several independently operated supermarkets in New Jersey, New York, and Puerto Rico, filed for bankruptcy in December of 1998.  (Food King Compl. 32-33.)  The Food King complaint further explains:

> On or about February 26, 1999, the trustee in bankruptcy commenced several actions against the Class A shareholders of Foodtown to recover, *inter alia*, alleged preferences, goods and services delivered, penalties for early withdrawal, and breach of fiduciary duty…Rather than abandon the Foodtown organization, several Class A shareholders, including plaintiff Food King and Foodtown, formed a defense group (the "Defense Group") to share in the cost of defending the litigation and to bring counterclaims against Twin County…Several Class A shareholders declined to join the Defense Group, and defended the bankruptcy litigation on their own.

(Food King Am. Compl. 33-34.)  Food King objects to the subsequent allocation of the settlement obligations among the various Foodtown shareholders and former Twin County members.  Count Three alleges that the Foodtown Board unfairly apportioned these costs using Board resolutions designed to oppress Food King as a shareholder, and it seeks a declaration voiding those resolutions and an injunction directing the Director defendants to fairly resolve the allocation of the Twin County settlement costs.  (Food King Compl. 42.)  The plain language of the policy clearly precludes coverage for this count.  The resolutions, the settlement, and the resulting allocation all arose out of the bankruptcy trustee's claims against Twin County Grocers.  Endorsement 6 excludes from coverage any Loss in connection with any claims brought against

Twin County Grocers.  Claims were brought against Twin County by the bankruptcy trustee, and Food King seeks to recover alleged losses arising out of those claims, namely the settlement allocation.  And although Foodtown in its moving brief posits the testimony of Robert Linkin, Foodtown's general counsel, that the purpose of Endorsement 6 was "to [only] preclude for claims brought against Twin County Grocers or its directors, employees, or trustees," the plain language of the policy, to which the Court must adhere in the absence of ambiguity, excludes Count Three from coverage.

### D. Count Four

Notwithstanding that Judge Cooper in the underlying action ordered that only Count One, and no other, be amended to assert a derivative claim, National Union contends that Count Four in actuality also alleges a derivative claim and is thus precluded by exclusion 4(f).  Count Four seeks to correct alleged inconsistencies in how the Board allocates insurance premiums and marketing costs among the cooperative members.  The Court looks to the nature of the alleged injury to determine whether Count Four asserts a derivative or individual claim.  Kramer, 546 A.2d at 351.  As to the insurance premiums, Food King alleges:

> Food King had been a participant in the insurance program from 1999 until the present…Upon information and belief, since 1999, several participants have misreported sales to the insurance department in order to reduce their allocated premium costs…The Board of Directors has failed to fulfill its fiduciary obligation to Food King and to the other participants in the general liability program.

(Food King Am. Compl. 44-45.)  Count Four also alleges that member Harp Marketing ("Harp") received a reimbursement for network outages suffered by several member stores in November 2001 and that no other member received such a reimbursement.  (Food King Compl. 46.)  And as to the allocation of marketing costs, Food King asserts:

11

> As part of its services with members, Foodtown produces, prints and distributes circulars and newspaper advertising each week…Members pay a fee each week per store to cover [marketing costs]…Upon information and belief, since 1998, members Harp and PSK receive $30 per thousand credit based on their representation of their costs.  Members Estevez Group and Mubarik receive $18 per thousand based on their representation of their costs…the cost to distribute circulars for Harp and PSK…As a result, the other members of Foodtown are subsidizing the advertising costs of PSK and Harp through a unlawful reduction of monies available for patronage dividends.

(Food King Compl. 47-48.)

Count Four is, in effect, a claim based on alleged injuries to certain members because of favoritism and inconsistent oversight.  The allegations are that some members are made to pay more for insurance premiums and marketing costs than other members; Harp received a reimbursement that other members did not receive; and the lack of oversight, intentional or not, with respect to marketing costs injured only some shareholders and not others, particularly PSK and Harp.  This alleged disparate treatment, although affecting a large number of shareholders, constitutes a discrete and particularized injury to the members "subsidizing" the favored members, not the shareholders as a class or the organization itself.  The Board need not have targeted, as National Union suggests in its supplemental briefing, Food King specifically, Food King need only have alleged that it suffered a particularized and discrete injury to make out an individual claim as opposed to a derivative claim.  Count Four does this and is not precluded from coverage by exclusion 4(f).

### E. Duty to Defend

The Court here determines that Counts Two and Four of the Food King complaint are covered under Foodtown's directors and officers liability insurance policy with National Union.  Though this issue does not appear to be a source of much contention, the parties' summary judgment briefs also make mention of whether the policy is a "duty to defend" policy.  As with

coverage and exclusion provisions, the plain language of the policy controls.  "The duty to defend is not a product of statute or of common law.  It is solely a contractual undertaking of the insurer and it can be as limited or as broad as the insurer sees fit to provide through its policy." Hartford Acci. & Indem. Co. v. Aetna Life & Casualty Ins. Co., 98 N.J. 18, 22 (1984).  The first page of the policy here explicitly states that National Union "does not assume any duty to defend."  (Ex. E to Zoller Decl.)  There can be no clearer answer to the question of whether the policy is a "duty to defend" policy than the quoted language.

**F. Attorneys' Fees**

Foodtown also seeks attorneys' fees pursuant to New Jersey Court Rule 4:42-9(a)(6), which allows for legal fees "[i]n an action upon a liability or indemnity policy of insurance, in favor of a successful claimant."  Although such an award is discretionary, New Jersey courts typically award attorneys' fees to an insured that prevails in bringing a declaratory judgment action to determine the bounds of coverage for costs incurred defending against third party claims.  See Sears Roebuck and Co. v. National Union Fire Ins. Co. of Pittsburgh, PA, 340 N.J. Super. 223, 243 (App.Div. 2001); Schmidt v. Smith, 294 N.J. Super. 569, 591 (App.Div.1996); Guarantee Ins. Co. v. Saltman, 217 N.J. Super. 604, 612 (App.Div. 1987); Tooker v. Hartford & Indemnity Co., 136 N.J. Super. 572 (App.Div.1975); New Jersey Manu. Ins. Co. v. Consolidated, 124 N.J. Super. 598 (Law Div.1973).  In Singer v. New Jersey, 95 N.J. 487 (1984), the New Jersey Supreme Court established a two-pronged test to determine when a party seeking fee shifting qualifies as a prevailing party.

> The first part of the Singer test requires "[a] party [to] demonstrate that his lawsuit was causally related to securing the relief obtained; a fee award is justified if [the party's] efforts are a 'necessary and important' factor in obtaining the relief." The first prong requires a factual causal nexus between the pleading and the relief ultimately received.

> The second part of the <u>Singer</u> test requires the party seeking attorneys' fees to show that "the relief granted had some basis in law." The second prong requires both a factual and legal determination. The party seeking attorneys' fees need not recover all relief sought, but rather, there must be "'the settling of some dispute that affected the behavior of the [party asked to pay attorneys' fees] towards the [party seeking attorneys' fees].'"

<u>N. Bergen Rex Transp. v. Trailer Leasing Co.</u>, 158 N.J. 561, 570-571 (N.J. 1999) (quotation marks in original).

Foodtown satisfies the first prong of <u>Singer</u>, in that it has obtained coverage for its claims solely as a result of this litigation.  In its December 1, 2003 letter responding to Foodtown's claims (Ex. A to Zoller Decl.), National Union set forth its stance that it would not pay out on Foodtown's claims with respect to four counts in the Food King complaint and it has continued to take that position throughout the resulting lawsuit.  Foodtown, because it prevailed as to Counts Two and Four, achieved 50% of the relief it sought and the result here resolves the dispute between the parties with respect to the defense costs in the underlying action. Foodtown's suit was more than a "necessary and important" factor in obtaining relief — once National Union determined that it absolutely would not pay on the policy, the lawsuit became the sole vehicle for Foodtown to obtain coverage for its claims.

Foodtown also satisfies the second prong of the <u>Singer</u> test, which requires that the relief granted had some basis in law.  In <u>North Bergen Rex Transport</u>, 158 N.J. at 571, the New Jersey Supreme Court concluded that the defendant's counterclaim had satisfied the second prong because the relief sought was based on a contract that obligated plaintiff to pay rental charges within certain time limitations. Here, the relief sought is also based on a contract, albeit in an insurance context, that obligates National Union to provide defense costs for covered claims. Foodtown based its successful claims on its insurance contract with National Union and thus the relief granted has some basis in law.

14

While the Court concludes that Foodtown satisfies the two prongs of the <u>Singer</u> test, the inquiry does not end there.  "[I]f a successful [prevailing party] has achieved only limited relief in comparison to all of the relief sought, the [trial] court must determine whether the expenditure of counsel's time on the entire litigation was reasonable in relation to the actual relief obtained…and, if not, reduce the award proportionately."  <u>Singer</u>, 95 N.J. at 500.  Foodtown, prevailing only on Counts Two and Four of the Food King complaint, achieved 50% of the relief it sought in its complaint.  But, as noted above, once National Union denied coverage under the directors and officers liability policy for claims brought against the Foodtown Board, the instant suit became the only vehicle for Foodtown to obtain coverage for its claims.  And because the successful claims and the unsuccessful claims arise out of the same underlying action for which National Union denied coverage, it was reasonable for Foodtown's counsel to expend time on the entire litigation to clarify its rights as to all the claims for which coverage was denied.  By successfully litigating to clarify the bounds of coverage, Foodtown achieved a measure of relief substantial enough to warrant a full award of reasonable attorneys' fees pursuant to New Jersey Court Rule 4:42-9(a)(6).  An order accompanies this opinion directing Foodtown to submit an attorneys' statement of services, detailing the fees and costs incurred prosecuting this action.

## IV. CONCLUSION

National Union's motion for summary judgment sought dismissal of the complaint, while Foodtown's motion sought a declaration that the policy covers Counts One through Four of the Food King complaint, compensatory relief for the defense costs covered, and attorneys' fees. The Court denies National Union's motion insofar as National Union sought dismissal of this lawsuit, while granting relief to the extent that it has dismissed Foodtown's claims based on

Counts One and Three of the underlying action.  The Court grants Foodtown's motion insofar as it sought a declaration of coverage, by granting declaratory relief as to Counts Two and Four.

As to apportionment and indemnification of the defense costs in the Food King action for Counts Two and Four, the Court notes that the Food King action is still pending before Judge Cooper.  Because that case is ongoing, the Court concludes that the parties themselves are in the best position to apportion the defense costs, and leaves to the parties the execution of the rulings herein.

An appropriate order accompanies this opinion.


Dated:  August 20, 2008                         /s/ _Katharine S. Hayden

                                                Katharine S. Hayden, U.S.D.J.